# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Yonatan P.,

      Petitioner,

v.

Todd Blanche, *Acting Attorney General*;
Markwayne Mullin, *Secretary, U.S.
Department of Homeland Security*; David J.
Venturella, *Acting Director of Immigration
and Customs Enforcement*; David
Easterwood, *Acting Director, St. Paul Field
Office Immigration and Customs
Enforcement*; Ryan Shea, *Sheriff of
Sherburne County*,

      Respondents.

File No. 26-CV-2949 (JMB/EMB)

**ORDER**

---

Jason L. Schellack, Autism Advocacy & Law Center, LLC, Minneapolis, MN, for Petitioner Yonatan P.

David W. Fuller and Worthington Phillips, United States Attorney's Office, Minneapolis, MN, for Respondents Todd Blanche, Markwayne Mullin, David Venturella, and David Easterwood.

David John Walker, Freeborn County Attorney's Office, Albert Lea, MN, for Respondent Ryan Shea.

---

This matter is before the Court on Petitioner Yonatan P.'s[1] Petition for a Writ of

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in immigration cases.

1

Habeas Corpus (Petition) under 28 U.S.C. § 2241.  (Doc. No. 1 [hereinafter, "Pet."].)

Respondents Todd Blanche, Markwayne Mullin, David Venturella, David Easterwood

(Federal Respondents), and Ryan Shea (together, with the Federal Respondents,

Respondents) are named in the Petition.  For the reasons explained below, the Court grants

the Petition.

### FINDINGS OF FACT

1.      Yonatan P. is a citizen of Venezuela, a resident of Chicago, Illinois, and has

lived in the United States since on or about December 1, 2023.  (Pet. ¶ 7, 16.)[2]

2.      Upon his entry into the United States, Yonatan P. surrendered to immigration

enforcement officials who gave him an identification number and paroled him into the

interior.  (*Id.* ¶ 17.)  Specifically, on or about December 4, 2023, Respondents issued

Yonatan P. a Form I-862 Notice to Appear and released him pursuant to a Form I-220A

Order of Release on Recognizance.  (Doc. Nos. 9-1, 9-2.)

3.      Yonatan P. has a pending asylum application, is currently in immigration

proceedings, and has a valid work permit.  (Pet. ¶ 17–19.)  There has not been a final order

of removal entered against him.  (*Id.* ¶ 18.)

4.      On April 30, 2026, Bloomington Police Department arrested Yonatan P. for

theft pursuant to Minn. Stat. § 609.52.2(a)(1) after employees at a Walmart suspected that

---

[2] Because Respondents did not contest any of the factual allegations in the Petition, these allegations are deemed admitted.  *See, e.g.*, *Bland v. California Dep't of Corr.*, 20 F.3d 1469, 1474 (9th Cir. 1994) ("When the State's return fails to dispute the factual allegations contained in the petition and traverse, it essentially admits those allegations."), *overruled on other grounds by Schell v. Witek*, 218 F.3d 1017 (9th Cir. 2000).

a person who was with Yonatan P. took an item worth approximately $5 without paying for it, although Yonatan P. was unaware of this and no stolen items were recovered from Yonatan P. (Doc. No. 9 at 2; Doc. No. 9-6; Doc. No. 13 ¶ 5.) That same day, Immigration and Customs Enforcement (ICE) issued an I-200 Warrant of Arrest and lodged an I-247A detainer with the Bloomington Police Department for Yonatan P. (Doc. No. 9 at 2; Doc. Nos. 9-3, 9-4.) Soon thereafter, Yonatan P. was arrested by ICE at the Hennepin County Jail without incident. (Pet. ¶¶ 19, 22–23.)

5.      Yonatan P. has diagnoses of HIV and neurosyphilis. (*Id.* ¶ 25.) Yonatan P. has alleged that he is not getting adequate treatment for his neurosyphilis infection. (*Id.*)

6.      On June 13, 2026, Yonatan P. filed his Petition. (*See* Pet.)

7.      On June 15, 2026, the Court ordered Respondents to file a response to the Petition on June 17, 2026, at 11:00 a.m., which deadline was later extended to June 17, 2026, at 5:00 p.m. upon Federal Respondents' timely request. (Doc. Nos. 3, 6–7.) The Federal Respondents timely filed a response and Yonatan P., after seeking permission from the Court, timely filed a reply on June 22, 2026. (*See* Doc. Nos. 8–13.)

## DISCUSSION

Yonatan P. seeks his immediate release, arguing that his detention violates the Due Process Clause of the Fifth Amendment and that Respondents arrested him without a valid warrant. (*See* Pet.) For their part, the Federal Respondents argue that Yonatan P.'s detention is mandatory under the Laken Riley Act, 18 U.S.C. § 1226(c)(1)(E)(ii) or, in the alternative, 8 U.S.C. § 1225(b)(2). (Doc. No. 8.) For the reasons set forth below, the Court grants the Petition in part.

### A.    Right to Habeas Relief

A writ of habeas corpus may be granted to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States.    28 U.S.C. § 2241(c)(3); *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (concluding that the Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States" (citing U.S. Const., Art. I, § 9, cl. 2)).  For most of the nation's history, habeas review "has remained a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Hamdi*, 542 U.S. at 525 (quotation omitted).  The right to challenge the legality of a person's confinement through a petition for a writ of habeas corpus "extends to . . . immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citation omitted).  The petitioner bears the burden of proving that his detention is illegal by a preponderance of evidence.  *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154 (D. Minn. 2025).

### B.    Inapplicability of the Laken Riley Act

Yonatan P. disputes the Federal Respondents' assertion that his detention is mandatory due to the application of the Laken Riley Act, 8 U.S.C. § 1226(c)(1)(E) (LRA). The Court agrees with Yonatan P.

The mandatory detention provision of the LRA requires satisfaction of two conditions; the first of which is not satisfied on this record.  Specifically, the LRA requires the detention of any non-citizen who

> (i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of
> section 1182(a) of this title; and

4

> (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting[3] . . . ,
>
> when the [non-citizen] is released[.]

8 U.S.C. § 1226(c)(1)(E).  The statute also requires that DHS "shall issue a detainer for a[] [non-citizen] described in paragraph (1)(E)" if they are in custody.  *Id.* § 1226(c)(3).

The record before the Court indicates that the Federal Respondents did not actually detain Yonatan P. under the provisions of the LRA.  Contrary to the legal argument submitted in their response to the Petition that references the LRA, the actual detainer form used in this case makes no reference to the LRA.  (*See* Doc. No. 9-3.)  Pursuant to 8 C.F.R. § 287.7(a), a detainer "serves to advise another law enforcement agency that the Department seeks custody of a[] [noncitizen] presently in the custody of that agency, for the purpose of arresting and removing the [noncitizen]."  The detainer Form I-247A contains a few checklists, one of which lists the various grounds on which DHS may be seeking local law enforcement's cooperation.  (*See* Doc. No. 9-3 at 1.)  One of the options on this form is that the noncitizen "is subject to the detainer provision of the Laken Riley Act and is required to be effectively and expeditiously taken into custody by DHS pursuant to 8 U.S.C. § 1226(c)(3)."  (*Id.*)  This box, however, was never checked.  Instead, the only basis for removal proceedings stated in the detainer form is that Yonatan P. "otherwise poses a risk to national security, border security, or public safety."  (*Id.*)  This record

---

[3] The LRA provides that the terms "theft" and "shoplifting" "have the meanings given such terms in the jurisdiction in which the acts occurred."  8 U.S.C. § 1226(c)(2).

5

compels the Court to conclude that the Federal Respondents misstate the true basis for the detention in this case; Yonatan P. was not detained pursuant to the LRA. Therefore, the LRA, 8 U.S.C. § 1226(c)(1)(E), cannot apply in this case.[4]

### C.      Actual Basis for Arrest and Detention

While the Federal Respondents alternatively argue that Yonatan P. is subject to mandatory detention pursuant to section 1225(b)(2), as interpreted by *Avila v. Bondi*, 170 F.4th 1128, 1133–35 (8th Cir. 2026) (concluding that section 1225(b)(2) requires the mandatory detention of non-citizens, without any individualized determination and regardless of whether the non-citizen is encountered at the border at the time of entry or in the interior of the United States months, years, or decades after entry), it is an undisputed matter of fact that the Federal Respondents have always justified Yonatan P.'s detention pursuant only to their discretionary authority under 8 U.S.C. § 1226.

First, in 2023, when Yonatan P. was initially apprehended by immigration officials at the border, the Federal Respondents issued him an Order of Release on Recognizance, releasing Yonaton P. pursuant to section 1226. (Doc. No. 9-1.) Second, the record presented established that on April 30, 2026, Yonatan P. was arrested with—and his current detention is therefore based on—a Form I-200 warrant, which was issued "pursuant to sections 236 and 287 of the [INA] [i.e., 8 U.S.C. §§ 1226, 1357] and part 287 of title 8,

---

[4] The Federal Respondents provide no evidence or argument concerning Yonatan P.'s risk to national security, border security, or public safety. While the Federal Respondents include Yonatan P.'s citation, they provide no details about his arrest or the basis for the citation. Given the evidence presented, including evidence that someone other than Yonaton P. was suspected of shoplifting a $5 item (Doc. No. 13 ¶ 5), the Court has no basis to characterize Yonaton P. as a risk to national security, border security, or public safety.

Code of Federal Regulations." (Doc. No. 9-4.)  Nothing in the record presented references detention pursuant to 8 U.S.C. § 1225(b)(2)(A).

Yonaton P. was arrested under section 1226 alone, and the Federal Respondents advance no legal argument to support the proposition that they can alter this fact through filing of their written response.  *See, e.g.*, *Martha C.G.P. v. Blanche*, No. 26-CV-2308 (DWF/JFD), 2026 WL 1329577, at *2 (D. Minn. May 13, 2026) (rejecting respondents' contention that petitioner was subject to mandatory detention under section 1225(b) where Form I-200 warrant served during petitioner's arrest represented that detention was pursuant to section 1226); *Hector J.A.S. v. Shea*, No. 26-CV-2242 (JRT/DLM), 2026 WL 1243500, at *2 (D. Minn. May 6, 2026) (same); *Souleimane C. v. Blanche*, No. 26-CV-2215 (LMP/JFD), 2026 WL 1180075, at *3 (D. Minn. Apr. 30, 2026) (same); *see also* *Espinoza-Avalos*, No. 8:26-CV-0191, 2026 WL 1396593, at *1–3 (D. Neb. May 19, 2026).

### D.      Invalidity of Warrant

Having determined that the Federal Respondents have detained Yonatan P. pursuant to section 1226, the Court next considers whether Yonatan P. was brought into custody pursuant to a valid warrant or pursuant to an authorized warrantless arrest.  For the reasons discussed below, the Court concludes he was not.

Pursuant to 8 U.S.C. § 1226(a), "[o]n a warrant issued by the Attorney General, a [non-citizen] may be arrested and detained pending a decision on whether the [non-citizen] is to be removed from the United States."  8 U.S.C. § 1226(a); *see also Ahmed M. v. Bondi*, No. 25-CV-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026) ("Issuance of a warrant is a necessary condition to justify discretionary detention under section

7

1226(a)." (quotation omitted)).  A Form I-200 is an administrative arrest warrant which authorizes a non-citizen's arrest if it is issued "*[a]t the time of issuance* of the [NTA], *or at any time thereafter* and up to the time removal proceedings are completed."  8 C.F.R. § 236.1(b) (emphasis added).  Putting both rules together, DHS may arrest a non-citizen using a Form I-200 only if the Form I-200 issues at the same time or after DHS issues an NTA.  *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1(b)(1).

In this case, the Federal Respondents did not follow this sequence.  The record presented establishes that the Federal Respondents did not generate an NTA at or near the time of Yonatan P.'s arrest.  (*See generally*, Doc. No. 9.)  Thus, the Court concludes that the Form I-200 warrant was plainly invalid under 8 C.F.R. § 236.1(d), and Yonatan P.'s arrest was affected without a required warrant.

Because Yonatan P.'s arrest was pursuant to an invalid warrant, and therefore unlawful, immediate release is the appropriate remedy.  *See Gonzalez Ochoa v. McCleary*, 816 F. Supp. 3d 921, 927–28, (S.D. Iowa 2026) (concluding ICE had no authority to arrest petitioner relying on Form I-200 that issued before the NTA); *Alberto C.M. v. Noem*, 817 F. Supp. 3d 735, 739 (D. Minn. 2026) (granting petition on grounds that detention under section 1226(a) was unlawful where Form I-200 "was not issued until after [petitioner's] arrest and initial detention"); *see also, e.g.*, *Hector J.A.S.*, 2026 WL 1243500, at *2 (ordering release of petitioner where respondents did not issue NTA until booking following arrest in the field); *Pina C.D.B. v. Bondi*, No. 26-CV-1929 (KMM/DJF), 2026 WL 810676, at *3 (D. Minn. Mar. 24, 2026) (concluding "immediate release is the proper remedy" for arrest effected in absence of valid administrative warrant); *Jouquin C.S. v.*

*Bondi*, No. 26-CV-1438 (DWF/DJF), 2026 WL 483256, at *2–3 (D. Minn. Feb. 20, 2026) (concluding DHS's detention of petitioner under section 1226(a) was unlawful because DHS arrested petitioner pursuant to a Form I-200 that was invalid by virtue of being issued prior to issuance of NTA); *Marinero v. Bondi*, No. 26-CV-1007 (JMG), 2026 WL 357653, at *1 (D. Minn. Feb. 9, 2026) ("[I]ssuing an administrative warrant after an arrest . . . isn't good enough to trigger § 1226(a).").

To the extent that the Federal Respondents alternatively seek to justify Yonatan P.'s arrest under the warrantless arrest provisions of 8 U.S.C. § 1357(a), the Court cannot agree because the record presented cannot support the necessary finding of probable cause.

Section 1357 permits an immigration officer to "arrest any [non-citizen] in the United States" without a warrant "if he has reason to believe that [1] the [non-citizen] . . . is in the United States in violation of any such law or regulation *and* [2] is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2) (emphasis added). The Eighth Circuit has interpreted the term "reason to believe" in section 1357(a)(2) to "mean[] constitutionally required probable cause." *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010). Here, the record presented contains no evidence to satisfy the second prong. The Federal Respondents urge the Court to adopt a per se rule that any non-citizen who an officer believes is removable is likely to escape. (Doc. No. 8 at 13–15.) However, the Federal Respondents do not provide any legal support for this novel rule, which would effectively render the second statutory requirement meaningless, and which would violate constitutional due process. *E.g.*, *Quintana*, 623 F.3d at 1239. The Federal Respondents also assume, without providing any factual support, that Yonatan P. knew

9

that he would be subject to mandatory detention pursuant to the LRA and therefore had an incentive to evade immigration authorities. (Doc. No. 8 at 13.) This assumption is also contrary to the evidence in the record given that the detainer issued by the Federal Respondents did not check the box indicating that Yonatan P. was subject to the LRA or that the detainer was being issued pursuant to the LRA. (*See* Doc. No. 9-3.) Finally, there is no indication in the Form I-213, discussing Yonatan P.'s apprehension and arrest, that officers believed they were undertaking a warrantless arrest, nor did they make any mention of any fear of Yonatan P.'s likelihood of escape. (*See* Doc. No. 9-5.)

Thus, Yonatan P.'s detention was unlawful and he is entitled to release.[5]

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the Petition (Doc. No. 1) is GRANTED as follows:

1.      Respondents are ORDERED to release Petitioner Yonatan P. immediately in Minnesota, and in any event no later than 4:00 p.m. CT on June 29, 2026.

---

[5] Although the Court need not address the question of whether Yonatan P.'s detention without bond violates the Fifth Amendment, it nevertheless alternatively concludes that, on balance, the *Mathews v. Eldridge* due-process factors tip in Yonatan P.'s favor. Yonatan P. has a significant private interest at stake (i.e., his liberty, his detention in a carceral setting, and his separation from his wife and child); the risk of erroneous deprivation through incarceration is needlessly high when inexpensive procedures such as a bond hearing protect against erroneous deprivations of liberty and separation of families; and the federal government has very little interest in incarcerating individuals en masse who pose little or no risk of flight or danger to the community. Thus, Yonatan P.'s ongoing detention is also unlawful for this reason as well. *See, e.g.*, *R.M. v. Blanche*, No. 26-CV-2283 (LMP/DLM), 2026 WL 1506306 (D. Minn. May 29, 2026) (concluding that respondents' mandatory detention without bond under 8 U.S.C. § 1225(b)(2) and *Avila* violated petitioner's rights to procedural due process and ordering a bond hearing); *Jesus Alejandro G.A. v. Blanche*, No. 26-CV-1932 (LMP/ECW), 2026 WL 1383138 (D. Minn. May 18, 2026) (same).

2.       On or before <u>11:00 a.m. CT on June 30, 2026</u>, counsel for Respondents shall file a letter affirming that they have released Petitioner Yonatan P.

3.       On or before <u>11:00 a.m. CT on June 30, 2026</u>, counsel for Respondents shall also file a declaration pursuant to 28 U.S.C. § 1746 by an individual with personal knowledge that states when and where the Petitioner was released, attaches any and all documentation concerning the Petitioner's release, and affirms with supporting documentation that all property of Petitioner was returned to Petitioner upon release (or, if property is retained, state which property is retained, the legal basis for its retention, and affirm that Respondents duly provided Petitioner with certified copies of any and all immigration-related documentation). Respondents must submit each of the following three forms to affirm return of Petitioner's property: I-77, I-216, and G-589. If Petitioner's property is lost, Respondents must also submit form I-387, "Report of Detainee's Missing Property." If Respondents cannot provide one or more of these forms, Respondents must address why they are unable to do so.

4.       Petitioner Yonatan P. may move separately within 30 days of final judgment in this action to recover attorney's fees and costs under the Equal Access to Justice Act, 20 U.S.C. § 2412(d).

5.       To the extent Petitioner Yonatan P. seeks additional relief, the Petition is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  June 26, 2026                            /s/ *Jeffrey M. Bryan*
                                               Judge Jeffrey M. Bryan
                                               United States District Court